## PAGE *v.* KINSMAN.

An estoppel, created by a lease, operates to give full effect to the contract, but beyond that, terminates with the estate devised ; and the tenant may then set up a preëxisting title in himself, even against the lessor.

If, in making application of a principle of law to the facts attempted to be proved, the judge omits 'to call the attention of the jury to one view that might be taken, the omission will not ordinarily be cause for disturbing the verdict, unless the court can see that some injury was likely to be occasioned by it.

CASE for flowage of the plaintiff's meadow in Jaffrey, caused by the defendant's mill dam in Fitzwilliam, from October 20, 1859, to February 19, 1861.

Upon the trial there was evidence tending to prove the facts alleged in the plaintiff's declaration.

The defendant claimed the right to flow the meadow during the winter season by the continued open user of that privilege, under a claim of right, uninterrupted for more than twenty years. His evidence tended to prove that the mill he now owns, was erected before 1800, and the dam had always been maintained at the same height and in the same condition ; that the gates were closed and the pond was filled, in the month of October, as soon as there was water to carry the mill, and that they were always opened, until about 1819, on the 15th of May, and after that date on the 10th of

May; that when the dam was full, the water was about two and a
half feet deep on the lower part of the plaintiff's meadow; that no
leave to flow was asked, or given, and that no damages were ever
claimed, or paid, by the mill owners to the owners of this meadow,
or others.  A witness, Abel Marshall, a former owner of the defend-
ant's mill, testified as follows: "I paid no damages for flowing to
any body.  I was not asked to pay damages, but they (the meadow
owners) complained the water ought to be taken off earlier, so the
owners and my partner and I agreed to take it off the 10th of May;
Jedediah Foster owned Page's meadow then.  After that we took it
off the 10th of May.  Jedediah Foster was present at the arrange-
ment as to drawing off the water May 10th.  We met at the hotel
at Fitzwilliam village.  Foster took no active part more than
the rest.  They complained the water was kept on too late, and we
had a meeting and agreed to draw it off the 10th of May, and they
were all satisfied, and there was no complaint after.  It was while
I owned the mill.  It was not far from the middle of the time I was
there.  I bought February, 1816, and owned six years.  There was
no understanding about any damage; no understanding that the
mill owners were to pay damage, if they injured the meadows;
nothing was said of any damage."

The plaintiff testified, that in the summer of 1843, he claimed
damages of Solomon H. Rand, who was then the owner of the mill,
and under whom the defendant claims.  During the winter pre-
ceding, the dam had broken away, and the plaintiff claimed that
the dam injured his grass.  Rand claimed the right to flow as he
had done, but he looked the meadow over, and told the plaintiff he
would give twenty-five dollars damage, if he would produce two
meadow owners to go before A. A. Parker, Esq., and testify, that
there had been any damages paid within twenty years.  He sum-
moned Jedediah Foster and Reuben Pratt to appear before Parker,
and they gave their testimony before him, and Rand said he was
satisfied he had no right to flow, and paid the twenty-five dollars.
Parker made a lease and Rand accepted it.  This lease was proved,
and was as follows:

"This indenture, made the fifteenth day of August, 1843, between
Jonathan Page of, &c., and Solomon H. Rand of, &c., witnesseth,
that for and in consideration of the sum of one dollar, paid by the
said Solomon H. Rand, the receipt whereof is hereby acknowledged,
the said Jonathan Page doth demise and lease to the said Solomon,
the right and privilege of flowing the meadow land belonging to
him, situate on lot No. 3, &c., in Jaffrey, as high and as much
as the same has been flowed when the mill was owned by Capt.
Luke Kendall and Abel Marshall, from the 20th day of October, to
the 1st day of May in each and every year, for the term of five
years from the date hereof; the said Rand to do no injury to the
said meadow, more than is unavoidable in flowing the same in a
prudent manner; and if any dispute shall arise between the parties
that the said meadow is flowed too high, or too long, or not in a
proper manner, the whole subject shall be left to Capt. Luke Kendall
and Abel Marshall, who shall have authority to modify the dam, or

hoist the gate, as they shall deem just and proper in conformity to this lease. In witness whereof, we have hereunto set our hands and seals the day and year first above written.

                                        JONATHAN PAGE,      (*Seal.*)
" Signed, sealed, and delivered          SOLOMON H. RAND." (*Seal.*)
          in presence of
     A. A. PARKER."

The plaintiff's counsel insisted that this lease estopped the defendant from claiming any right to flow his meadow, by virtue of any title of an earlier date. But the court held that Rand was estopped only during the continuance of the lease, and the instrument was admissible only in the nature of an implied admission that said Rand had no right to flow there as the defendant now claims, just as the express admission to the same effect testified to by the plaintiff, is admitted, to be weighed upon the question whether the owners of the mill had acquired a right to flow by twenty years user; that if it was shown that the owners of the mill had previously a right to flow the plaintiff's land, it could not be lost, or surrendered by a mere admission.

After the jury had been out some time, and the court had adjourned, a note was written by the foreman to the judge, saying that they had a misunderstanding among them, as to the effect of the charge relative to Mr. Marshall's testimony, and requesting further instructions. The judge wrote as follows: " I said to the jury that if the claim of the owners of the meadow was, that the mill owners had no right to flow at all, the arrangement then made would interrupt any rights the mill owners were gaining by their exercise of the privilege of flowing. But if the meadow owners only disputed the right of the mill owners to flow so late as the 15th of May, the claim then made and the agreement then entered into, would not defeat the right to flow to the 10th of May. If the dispute was only as to the right to flow from the 10th of May to the 15th, any right then gained to flow to the 10th, would not be affected, nor would any right they were then gaining be defeated, if afterward completed."

To these instructions and to the ruling before stated the plaintiff excepted.

The jury having found a verdict for the defendant, the plaintiff moved to set it aside by reason of said exceptions.

*Cushing*, for the plaintiff, contended that the lessee was estopped to set up a preëxisting title in himself, and cited *Carpenter* v. *Thompson*, 3 N. H. 204 ; *Russell* v. *Fabyan*, 27 N. H. 529 ; *Plummer* v. *Plummer*, 30 N. H. 558 ; *Thorndike* v. *Norris*, 24 N. H. 454 ; and he also urged that the written instructions were erroneous, for omitting to notice the assumption that no adverse claims existed.

*Wheeler & Faulkner*, for the defendant, cited, upon the first point, 1 Greenl. Ev., sec. 25 ; *Carpenter* v. *Thompson*, 3 N. H. 204 ; and

*Gray* v. *Johnson*, 14 N. H. 414; and to the second point, *Shapley* v. *White*, 6 N. H. 172; *Bassett* v. *Salisbury Co.*, 28 N. H. 438; and *Moore* v. *Ross*, 11 N. H. 547.

BELLOWS, J.    The mill owner claims by prescription the right to flow the plaintiff's land as he has done; and one question is, whether the acceptance of a lease from the plaintiff by a former owner of the mill under whom the defendant claims, of the right so to flow the plaintiff's meadow, is in law an estoppel; the lease being for five years, and at a period after the right by prescription is claimed to have been acquired.

The court instructed the jury that this lease estopped the defendant's grantor only during the term, and declined to instruct them that he could not claim a right to flow the meadow by virtue of any title of an earlier date.

This view of the court we consider to be correct.    In Co. Litt. 47 (b), it is laid down, that "if a man take a lease for years of his own land by deed indented, the estoppel doth not continue after the term ended.    For by the taking of the lease the estoppel doth grow, and consequently, by the end of the lease the estoppel determines;" citing 38 H. 6, 24; 30 E. 3, 21.    But if estopped by matter of record, as by fine, &c., it continues after.    38 H. 6, 24; 30 E. 3, 21, note 13.    This is precisely in point, and is recognized fully in *Carpenter* v. *Thompson*, 3 N. H. 204, by *Richardson*, C. J., where it was held that the lessee is estopped only during the term to deny the title of the lessor; and here, as in Co. Litt. 47 (b), the attempt was to set up the estoppel against a preëxisting title in the lessee. *Jones' Case*, Moore 181, is also in point; so is Croke Eliz. 36; and Com. Dig., Estoppel F.

In Taylor on Landlord and Tenant (secs. 88, 89), it is said that. an estoppel can not operate after the estate determined; for it begins by, and, therefore, terminates with the lease.    See cases cited.    Also, 1 Greenl. Ev., sec. 25; and *England* v. *Slade*, 4 T. R. 682.

In the case of *Carpenter* v. *Thompson*, the lease was of "all the land and buildings which the lessor held from M. T. Thompson by deed bearing date the 20th March, 1813"; and it was claimed that this was good to show title in the lessor from Thompson, by way of recital.

The court do not give any opinion on that point, but say, that however this may be, the estoppel, if any, is set at large by another, that is, a subsequent deed, from lessor to Thompson.

But there is no such question here; the lease only granting the right of flowing the meadow land belonging to the lessor, situated, &c., without any assertion of title to the flowage beyond what is implied in the mere act of leasing; and this, as we have seen, is not sufficient.

The general doctrine of *Carpenter* v. *Thompson*, is recognized in *Gray* v. *Johnson*, 14 N. H. 414–421; *Russell* v. *Fabyan*, 27 N. H. 529–537, and cases.    The language of *Eastman*, J., in the latter case is, that he will be estopped during the term.

In *Willison* v. *Watkins*, 3 Peters 48, *Baldwin*, J., holds that the tenant is estopped during the tenancy; and he says the principle operates in its full force to prevent the tenant from violating that contract by which he obtains and holds possession. But it was held that having disclaimed his landlord's title, and notified him that he holds adversely, he is no longer estopped, but may acquire a title, by adverse possession, as in the case of a mortgagor and mortgagee, trustee and *cestui que trust.* See, also, *Tripe* v. *Marcy*, 39 N. H. 439. We therefore think the instructions on this point correct.

As to the written instructions on the subject of Marshall's testimony, we think there was no error. The bearing that it might have, as matter of law, upon the different views which were suggested, was correctly stated; and even if still another view, as stated by the plaintiff's counsel, might have been taken, the omission to do so would not, we think, be cause for disturbing the verdict. There might be cases where the omission of the judge to call the attention of the jury to a particular view of the case, might prejudice one of the parties; and, under some circumstances, especially where the instructions were given in writing in the absence of the parties, with no opportunity to ask further instructions, it might be of such character as to justify the setting aside of the verdict.

But such is not the case before us. Beside, those instructions appear to be but a repetition of the charge in open court; and so there was an opportunity to ask attention to the other view. And there must be, therefore,

*Judgment on the verdict.*